UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,  CIVIL NO. 09-2204 (PJS/JSM)

    Plaintiff,

v.

$35,020.00 in U.S. CURRENCY,  **REPORT AND RECOMMENDATION**

    Defendant,

JOSE LUIS MORA-VILLANUEVA,

    Claimant.

This matter came before the Court on plaintiff's Motion to Strike Claim and Answer, for Default Judgment and a Final Order of Forfeiture [Docket No. 26]. Claimant Jose Luis Mora-Villanueva ("claimant") filed no response to plaintiff's motion. This motion was decided on the written submissions of plaintiff pursuant to the Court's order of August 30, 2010. [Docket No. 32]. This matter has been referred to the Undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1 (c). Based upon plaintiff's Motion to Strike Claim and Answer, for Default Judgment and a Final Order of Forfeiture, the Declaration of David W. Fuller, Esq. in Support of Application for Entry of Default, and upon all the files, records and proceedings herein, the Court makes the following:

## FINDINGS OF FACT

    1.    Plaintiff United States of America filed a verified Complaint for Forfeiture <u>In Rem</u> on August 24, 2009. See Complaint [Docket No. 1]. The Complaint alleged that the defendant currency was subject to forfeiture pursuant to 21 U.S.C. § 881 (a)(6)

because "it was furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act." Id., ¶ 6.

The defendant currency was comprised of $35,020.00 in United States currency, which was seized on December 11, 2008 from Jose Luis Mora-Villenueva ("claimant") in St. Paul, Minnesota by the St. Paul Police Department and the Drug Enforcement Administration. Id., ¶ 2; see also Affidavit of Michael Meyer in Support of Complaint for Forfeiture, ¶ 2 ("Meyer Aff.") [Docket No. 2]. Meyer had eleven years of experience as a police office and had been a narcotics agent for the past six years. Meyer Aff. ¶ 1. At the time of the seizure he was assigned to the Drug Enforcement Administration ("DEA") as a Task Force Officer. Id. ¶ 1. Meyer and a DEA agent stopped claimant's car for a traffic stop and found that he was driving without a valid license. Id. ¶ 3. He was cited for that office. Id. Before claimant's car was towed away, St. Paul Police officers found a box containing $35,020.00 in U.S. currency in the front passenger seat of his car. Id. Meyer testified that claimant told him that he was picking up the box for his uncle, who sold a vehicle in exchange for the cash. Id.,¶ 4. A trained police dog detected the odor of narcotics in the area of the shoe box. Id., ¶ 5. Claimant gave Meyer and the DEA agent consent to search the contents of his two cell phones. Id., ¶ 6. Meyer stated that he recognized one of the numbers as belonging to a drug dealer currently under investigation. Id. The phone also had photos showing claimant with large sums of bundled cash and expensive vehicles, although claimant told Meyer that he was unemployed and had been looking for work for months. Id.

Before claimant was released, the DEA agent issued a receipt to him for an unknown amount of cash (later determined to be $35,020.00) and advised him that the cash would be held pending a forfeiture proceeding. Id.,¶ 7. An officer drove claimant to his home address in St. Paul. According to Meyer, a confidential reliable informant told him that an individual living at that address supplied large amount of marijuana to drug dealers on St. Paul's east side. Id. The defendant currency is currently in the custody of the United States Marshals Service. Complaint, ¶ 2.

2. A Warrant of Arrest and Notice In Rem was issued by the Clerk of Court of the United States District Court, District of Minnesota on September 4, 2009, directing the United States Marshal to arrest the defendant currency and to serve all known persons and entities claiming an interest in the defendant currency with a copy of the Warrant of Arrest and Notice In Rem. See Warrant of Arrest and Notice In Rem [Docket No. 3]. The notice advised all known and unknown interested persons and entities to serve on the United States Attorney and file with the Clerk of Court a verified statement of interest in or right against the defendant currency within 35 days of the date the notice was sent or, as applicable, no later than 30 days after the date of final publication of the notice of civil forfeiture. Additionally, the notice provided that any person having filed a claim must also file a motion or an answer to the complaint no later than 20 days after filing the claim. Id., p. 2.

3. A Notice of Civil Forfeiture was posted on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days, beginning on August 28, 2009, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. See Declaration of Publication of

Assistant United States Attorney David W. Fuller [Docket No. 4]; Declaration of David W. Fuller in Support of Application for Entry of Default ("Fuller Decl."), ¶ 6 [Docket No. 25].

4. On September 16, 2009, plaintiff's counsel, Assistant United States Attorney David Fuller, mailed a Notice of Judicial Forfeiture Proceedings, the Complaint for Forfeiture In Rem, the affidavit of Task Force Officer Michael Meyer in Support of Complaint and a copy of the Warrant of Arrest and Notice In Rem by certified mail to Luis Martin Martines (a/k/a Luis Corona)[1] and Beau McGraw, claimant's attorney. See Fuller Decl., ¶ 4.

5. On September 29, 2010, claimant filed a verified claim against defendant currency. See Claim of Jose Luis Mora-Villanueva [Docket No. 5]. Claimant's counsel, Beau McGraw, interposed an answer to the Complaint on October 26, 2009. See Answer [Docket No. 7]. In his answer, claimant denied that the funds were subject to forfeiture and denied the factual allegations set forth in the Complaint. See Answer, ¶ 6.

6. Plaintiff served written discovery on attorney McGraw on December 17, 2009. See Plaintiff's Memorandum of Law in Support of Motion to Compel Discovery, Ex. A [Docket No. 14] (copy of service letter, interrogatories and requests for production of documents served on claimant). On January 13, 2010, the Court issued its Pretrial Scheduling Order. See Order [Docket No. 12]. Pursuant to that Order, the matter was to be ready for trial on January 1, 2011. Id., p. 3.

---

[1] Claimant identified Luis Martin Martines (a/k/a Luis Corona) as his uncle. See Plaintiff's Memorandum of Law in Support of Motion to Strike Claim and Answer, for Default Judgment and for Forfeiture ("Pl. Mem.") [Docket No. 27], p. 6. When the currency was seized, Claimant told Officer Meyer that he was picking up the box of cash for his uncle, identified at that time as Luis Mora. Meyer Aff. ¶ 4.

7. Claimant never answered the discovery and on March 4, 2010 plaintiff moved the Court for an order compelling claimant to respond to plaintiff's interrogatories and requests for production. See Motion to Compel Claimant to Respond to Plaintiff's Interrogatories and Requests for Production of Documents [Docket No. 13]. The Court issued an Order/Notice of Hearing on March 9, 2010 requiring claimant to serve and file a response to plaintiff's motion to compel. See Order, March 9, 2010 [Docket No. 16]. No response was filed and the Court granted plaintiff's motion to compel discovery. See Order, April 1, 2010 [Docket No. 17]. The Court ordered claimant to respond to plaintiff's interrogatories and document requests on or before April 14, 2010. Id.

8. Fuller attempted to depose claimant on April 22, 2010. Pl. Mem., Ex. C (April 16, 2010 correspondence from Fuller to McGraw stating "I have concerns regarding your client's attendance at next week's deposition, scheduled for April 22, 2010…"). That deposition was cancelled because McGraw could not assure Fuller that claimant would appear. Id. (May 25, 2010 correspondence from Fuller to McGraw, stating "we cancelled the scheduled deposition based on your failure to assure me that your clients [2] would attend and your statement at the time that you intended to withdraw from the case. . . each day of additional delay and noncompliance by you and the claimant prejudices the United States…the May 1, 2010 deadline for expert disclosures has now passed. . . ."). The deposition was rescheduled for June 30, 2010, at Fuller's offices. Fuller, McGraw, a translator, Officer Michael Meyer, who signed the affidavit in

---

[2] At that time, McGraw was representing both claimant and his uncle, Luis Corona. See Pl. Mem., Ex. C (correspondence dated April 16, 2010 from Fuller to McGraw, stating "Also, you have stated that you represent Mr. Villa-Nueva's (sic) uncle and he is aware of his deposition scheduled for 2:00 p.m. on the same day. . ."). McGraw later stated that he did not represent Mr. Corona. See Pl. Mem., Ex. D (deposition transcript, p. 5 "I'm not representing [Mr. Corona] in this action.")

support of the Complaint, a paralegal from Fuller's office, and a court reporter were all present on June 30, but claimant again failed to appear. Id., Ex. D (deposition transcript). Fuller made a record of claimant's failure to appear and McGraw affirmed on the record that he had received the Notice of Taking Deposition and that he provided the notice to claimant at his last known address. Id., p. 5. The notice was not returned to him as undeliverable. Id.

9. The next day, McGraw filed a motion to withdraw as claimant's attorney. See Motion to Withdraw as Attorney of Record for Claimant [Docket No. 18]. McGraw served claimant with a copy of the Notice of Motion to Withdraw, Motion to Withdraw and Declaration of Beau McGraw in Support of the Motion to Withdraw ("McGraw Decl.") [Docket No. 20] at claimant's last known address. See Affidavit of Service [Docket No. 23].

10. McGraw's declaration in support of his motion to withdraw sets forth the following relevant facts:

    a. McGraw drafted responses to Fuller's discovery and provided a copy of the draft to claimant. Claimant refused to sign the discovery responses and otherwise refused to comply with the discovery requests. McGraw Decl., ¶¶ 2- 3.

    b. McGraw received Fuller's Notice of Taking Deposition for the June 30, 2010 deposition on June 16th, 2010. He provided claimant with a copy of that notice. Id. at ¶ 4.

c. No correspondence, including the Notice of Taking Deposition, was ever returned to McGraw as undeliverable and claimant never provided him with any alternate address. Id. at ¶¶ 5, 6.

d. According to McGraw, "[Claimant] is not showing a willingness to assist in such litigation and has been unwilling to participate… ." Id. at ¶ 8.

11. The Court granted McGraw's motion to withdraw following a hearing on the matter at which Fuller and McGraw appeared, but claimant did not. See Order, July 21, 2010 [Docket No. 22]. At the hearing on the motion, McGraw stated that he had not heard from claimant since February, 2010, when his office had some contact with him regarding draft discovery responses. The Court noted on the record that claimant had not attempted to contact the Court by telephone before the hearing. The Court concluded in its written order that McGraw gave claimant appropriate notice and timely served his motion, but claimant failed to respond or appear. Id., p. 1. In light of those facts, and plaintiff's lack of objection, the Court granted McGraw's motion on the ground that McGraw demonstrated the requisite good cause for withdrawal under Local Rule 83.7(c). Id., p. 2. The Court further indicated that claimant would be proceeding pro se unless or until a Notice of Representation was filed on his behalf. Id. The Court mailed a copy of its Order to claimant at his last known address on or about July 21, 2010 ³

---

³ Claimant's Verified Claim gave an address in Ellensburg, Washington. [Docket No. 5]. The Rule 26(f) report gave the same address. See Rule 26(f) Report [Docket No. 10]. Beau McGraw mailed a copy of the notice of motion and motion to withdraw and his declaration to claimant at the same address. See Affidavit of Service of Beau McGraw [Docket No. 23]. The Court's order of July 21, 2010 granting McGraw's motion to withdraw states the same address as claimant's "last known address." See Order, July 21, 2010 [Docket No. 22]. Plaintiff mailed the current motion papers and proposed order to that address. See Certificate of Service of Motion Documents and Proposed

7

12. Pursuant to the Court's scheduling order, discovery closed July 1, 2010, and the matter is scheduled to be trial ready on January 1, 2011. <u>See</u> Pretrial Scheduling Order, p. 3. Since interposing a verified claim and answer, there has been no appearance whatsoever by claimant in this proceeding. He never responded to plaintiff's discovery and did not serve any discovery. Pl. Mem., p. 6. As of the July 19, 2010 hearing on McGraw's motion to withdraw, McGraw had not heard from claimant since February, 2010. No notice of representation has been filed on claimant's behalf and to the best of the Court's knowledge, he continues to represent himself.

13. Other than claimant's verified claim and answer, no other verified claims or answers have filed and the time for such filings has expired. <u>See</u> Fuller Decl., ¶ 8. The Clerk of Court entered default judgment on August 25, 2010, against all unknown persons or entities having any interest in the defendant currency. <u>See</u> Clerk's Entry of Default [Docket No. 31].

14. Plaintiff moved the Court for an order striking claimant's verified claim and answer as a sanction for claimant's failure to respond to discovery, for default judgment against claimant and all unknown persons or entities with an interest in the defendant property, and a final order of forfeiture. The Court ordered claimant to serve and file a response to plaintiff's motion on or before October 11, 2010. <u>See</u> Order/Notice of Hearing, August 30, 2010 [Docket No. 32]. A copy of this Order was mailed to claimant. Claimant did not respond to plaintiff's pending motion.

---

Order [Docket No. 29]. This Court's order/notice of hearing [Docket No. 32] requiring claimant to respond to the current motion was mailed to this same address.

## CONCLUSIONS OF LAW

Pro se litigants are held to a less stringent pleading standard than represented parties. See Whitson v. Stone County Jail, 602 F.3d 920, 922 fn.1 (8th Cir. 2010). However, pro se litigants are not excused from complying with court orders. Leach v. Waterway Car Wash, 217 Fed. Appx. 571 (8th Cir. 2007). Further, they are not exempt from complying with the Federal Rules of Civil Procedure. See Norwood v. Potter, 363 Fed. Appx. 415, 416 (8th Cir. 2010) (pro se plaintiff not excused from the requirements of Fed. R. Civ. P. 56) (citing Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986) (noting that pro se litigants are not excused from complying with procedural law)). The court has broad discretion impose the appropriate sanction upon a party for failure to participate in discovery. National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642 (1976). Consequently, claimant is as susceptible to the discovery sanctions provided by Rule 37 as any other party. See Degan v. United States, 517 U.S. 820, 827 (1996) ("If [the] unwillingness of [a party] to appear in person results in non-compliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence, or other matters, he will be exposed to the same sanctions as any other uncooperative party. A federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case. Again, its powers include those furnished by the federal rule, see, *e.g.*, Fed. Rules Civ. Proc. 37. . . .")

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides for the following sanctions for a party's failure to obey a discovery order:

(i) Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) Striking pleadings in whole or in part;

(iv) Staying further proceedings until the order is obeyed;

(v) Dismissing the action or proceeding in whole or in part;

(vi) Rendering a default judgment against the disobedient party;

(vii) Treating as contempt of court the failure to obey any order except an order to submit to a physical or mental exam.

To justify the severe sanctions of default and striking pleadings, Rule 37 requires: 1) an order compelling discovery; 2) a willful violation of that order; and 3) prejudice to the opposing party. Sentis Group, Inc. v. Shell Oil Co., 559 F.3d 888, 899 (8th Cir. 2009).[4]

The discretion of a court to issue Rule 37 sanctions "'is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just' and relate to the claim at issue in the order to provide discovery.'" Hairston v. Alert Safety Light Prod. Inc., 307 F.3d 717, 719 (8th Cir. 2002) (quoting Avionic Co. v. General Dynamics Corp., 957 F.2d 555, 558 (8th Cir. 1992)). The "'district court's discretion narrows as the severity of the sanction or remedy it elects increases.'" Sentis Group, 559 F.3d at 888 (quoting Wegener v.

---

[4] In Sentis, the court considered the sanction of dismissal. The Eighth Circuit Court of Appeals treats the Rule 37 sanctions of entry of default judgment and striking pleadings as analogous to dismissal in terms of the "severe" and "harsh" nature of these sanctions. See, e.g. Chrysler Corp. v. Carey, 186 F.3d 1016, 1020 (8th Cir. 1999) (describing the sanction of striking pleadings as "severe"); International Bhd. of Electrical Workers, Local Union 545 v. Hope Elec. Corp., 380 F.3d 1084, 1105 (8th Cir. 2004) ("when the sanction imposed is default judgment and the striking of defendant's answers, our review is 'more focused' due to the severity of the sanction and the deprivation of the defendant's opportunity to be heard on the merits) (citing Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 993 (8th Cir. 1975)).

Johnson, 527 F.3d 687, 692 (8th Cir. 2008). This is because of the severity of these sanctions and the countervailing strong public policy favoring a trial on the merits and against depriving a party of his day in court. Id. A district court is not required to impose the least onerous sanction, provided it considers whether a lesser sanction is available or appropriate. Brennan v. Qwest Commc'n Int., Inc., 2009 WL 1586721 * 7 (D.Minn. June 4, 2009) (citing Keefer v. Provident Life & Accident Inc. Co., 238 F.3d 937, 941 (8th Cir. 1999)).

This Court finds that the sanctions plaintiff requests are appropriate. Claimant ignored the Court's order compelling his responses to written discovery, he has twice failed to appear for his deposition, and he has failed to comply with the Court's order that he respond to plaintiff's current motion. He cooperated with his counsel up to the point of reviewing draft discovery answers, and then stopped responding, leaving his counsel with no alternative but to withdraw from representation. There are no facts before the Court to indicate that claimant moved from his last known address or has been unresponsive for any reason other than his willful disregard of the Court's orders and his own lawyer's attempts to assist him with his case. The resulting prejudice to plaintiff is extreme. Plaintiff has no way to prepare its case for trial, having received no written discovery answers and having been deprived of the opportunity to take claimant's deposition.

In the in rem forfeiture cases plaintiff cited in its memorandum of law (Pl. Mem., p. 8), courts of other jurisdictions have imposed the sanctions of entry of default judgment and striking claims under similar circumstances. See United States v. $18,680.00 in United States Currency, 2009 WL 1158953 *1 (M.D. Ga. April 28, 2009)

11

(granting government's motion to strike claimant's responsive pleading as a sanction for claimant's "complete and willful refusal to comply with the rules of discovery and the court's scheduling and discovery order."); United States v. Currency $5,200, 2009 WL 2370748 *4 (E.D.Mich. July 30, 2009) (granting government's motion to strike claimant's claim as a sanction for failing to comply with court's order to respond to interrogatories); United States v. $72,100.00 in Currency, 2009 WL 247837 *5 (10th Cir. Feb. 3, 2009) (aggravating factors surrounding claimant's refusal to provide discovery as ordered by the court outweighed the strong policy to resolve cases on their merits, sanction of striking claimant's claim to the defendant currency was appropriate.)

The October 11, 2010 deadline the Court imposed on claimant to respond to the pending motion has come and gone, without response. In light of claimant's complete disappearance from the case, the Court reasonably concludes that he has abandoned his claim against defendant currency and that any of the less onerous sanctions described in Rule 37(b)(2)(A) would be ineffective. See Brennan, 2009 WL 1586721 * 7 (D.Minn. June 4, 2009) (citing Keefer v. Provident Life & Accident Inc. Co., 238 F.3d 937, 941 (8th Cir. 1999)) (the court should consider whether less onerous sanctions would be appropriate).

Weighing the sanction requested by plaintiff against the policy favoring a trial on the merits, and considering both claimant's status as a pro se party and his willful disregard of the Court's orders, the Court concludes that the sanction requested is appropriate. Claimant's claim and answer should be stricken. Plaintiff has also asked that a default judgment be entered against claimant and all unknown persons or entities having an interest in the defendant currency. After claimant's claim and answer are

stricken, there is no need to enter a default judgment against claimant personally, as neither his claim nor his answer will be of record. However, a renewed default judgment against all unknown parties or entities with an interest in the property is appropriate.[5]

Additionally, plaintiff has moved the Court for a final order of forfeiture. Plaintiff has met the requisite notice and publication requirements, no claims other than claimant's have been filed against defendant currency, and the time for filing such claims has expired. See Fuller Decl., ¶¶ 3, 6 and 8. The Clerk of Court has already entered default judgment against all unknown entities or parties with an interest in the funds. See Clerk's Entry of Default.

Plaintiff's fulfillment of the procedural requirements of Supplemental Rule G(4)(a)(iv)(C) of the Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as described above, does not, standing alone, entitle plaintiff to a final order of forfeiture. Plaintiff must still meet its burden to allege facts sufficient to support a final order of forfeiture under 21 U.S.C. § 881(a)(6). The statute subjects to forfeiture "all moneys…furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter." See 18 U.S.C. § 881(a)(6).

The Court has carefully reviewed the Complaint and the affidavit of Officer Michael Meyer, who was directly involved in the seizure. Meyer, an experienced police

---

[5] The Clerk of Court entered default on August 25, 2010 [Docket No. 31]. In light of the plaintiff's current motion, and to avoid confusion after claimant's claim and answer are stricken, the Clerk should be directed to enter a new default judgment, extinguishing all right, title and interest of any party or entity in the defendant currency.

officer and narcotics agent, testified by affidavit that his trained police dog detected the odor of narcotics in the area where the shoe box containing the cash was found. Meyer Aff. ¶ 5. He further testified that he recognized one of the phone numbers in claimant's cell phone as belonging to a drug dealer currently under investigation. Id. ¶ 6. The cell phone also contained photos of claimant with large amounts of bundled cash and expensive vehicles, although claimant told Meyer he was unemployed. Id. Meyer concluded, based on these facts, that he "believe[d] that the $35,020.00 in U.S. currency seized from [claimant's] vehicle was [subject to forfeiture] pursuant to 21 U.S.C. § 881(a)(6). After claimant's claim and answer are stricken, the allegations as set forth in the complaint and facts set forth in Meyer's affidavit will be unrebutted. Based on these facts, the Count concludes that a final order of forfeiture is appropriate.

## **RECOMMENDATIONS**

For the reasons set forth above, it is recommended that:

1. The Claim [Docket No. 5] and Answer [Docket No. 6] of Jose Luis Mora-Villanueva should be stricken from the record.

2. Default judgment should be entered against all unknown persons and entities having an interest in defendant currency who have failed to file a verified claim and answer in this proceeding.

3. All right, title and interest in thirty-five thousand and twenty dollars ($35,020.00) of defendant currency should be forfeited to and vested in the United States of America pursuant to 21 U.S.C. § 881(a)(6) for disposition according to law.

4. The United States Marshals Service should dispose of the thirty-five thousand and twenty dollars ($35,020.00) in accordance with law.

Dated:    December 1, 2010                         *s/Janie S. Mayeron*
                                                    Janie S. Mayeron
                                                    United States Magistrate Judge

**NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **December 15, 2010,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals. Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **December 15, 2010.**